ORIGINAL

# In the United States Court of Federal Claims

No. 15-1482T
(Filed: June 27, 2016)

**FILED**

**JUN 2 7 2016**

U.S. COURT OF
FEDERAL CLAIMS

*************************************

JOHN W. SIMMONS,       *

                    *

           Plaintiff,       *

                    *

v.                        *

                    *

THE UNITED STATES,       *

                    *

           Defendant.       *

*************************************

Tucker Act; 28 U.S.C § 1491; Pro Se
Plaintiff; Motion to Dismiss; RCFC
12(b)(1); Tax Refund Claim; Full
Payment Rule; Wrongful Levy Claim;
26 U.S.C. § 7426

John W. Simmons, Philadelphia, PA, pro se.

Blaine G. Saito, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Before the court is defendant's motion to dismiss the complaint, filed pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). Although not specifically pled as such, the pro se plaintiff in this case appears to seek a federal income tax refund as a result of the Internal Revenue Service's ("IRS") denial of claimed deductions for (1) ordinary and necessary business expenses, (2) expenses related to continuing medical education, and (3) charitable contributions. For the reasons stated below, the court grants defendant's motion for lack of subject matter jurisdiction.

## I. BACKGROUND

On December 7, 2015, plaintiff John W. Simmons, M.D., a "Disability Physician Specialist II for the [Pennsylvania Department of Labor and Industry] and Social Security

Administration,"[1] filed his complaint in this court seeking a federal income tax refund.[2] Compl. 1. The complaint consists of three IRS "Request for Appeals Review" forms bearing plaintiff's handwritten narrative disputing the IRS's determinations for tax years 2009, 2012, and 2013.[3] Id. at 1, 3, 5. Attached to each of these forms is a corresponding "Notice of intent to seize ("levy") your state tax refund or other property" ("Levy Notice"),[4] all of which are dated November 9, 2015. Id. at 2, 4, 6. The Levy Notices seek (1) $33,905.92 for tax year 2009; (2) $14,051.78 for tax year 2012; and (3) $19,261.68 for tax year 2013. Id. Although plaintiff's handwritten claims are difficult to read, it appears that his objections relate to the IRS's denial of claimed deductions for ordinary and necessary business expenses, for expenses related to continuing medical education, and for charitable contributions. Id. at 1, 3. In addition, plaintiff claims the IRS erred by considering a "False 1099" form, which pertains to income received from stocks and bonds, submitted for tax year 2009. Id. at 5. According to plaintiff, he has "never been involved with stocks & bonds." Id.

The genesis of plaintiff's dispute with the IRS occurred in June 2014, when, according to plaintiff, he appeared for an IRS audit of his 2013 tax return. Pl.'s Resp. 1. As a result of the IRS's review of that return, the IRS expanded the scope of its audit to include tax years 2009 and 2012. See Def.'s Ex. A2-3, A5-6, A8-9. The expanded audit revealed that plaintiff failed to file a return for tax year 2009. Id. at A2-3. As a result, the IRS prepared a "Substitute for Return" form on December 15, 2014. Id. at A2. The following year, on October 19, 2015, the IRS assessed additional tax, interest, and penalties totaling $65,213.45. Id. According to the IRS's "Certificate of Assessments, Payments and Other Specified Matters" ("Certificate of Assessments and Payments") form, also referred to as a "transcript" or "Form 4340,"[5] issued for

---

[1] Plaintiff describes his occupation as "a Disability Specialist Physician II for the Pennsylvania Department of Labor and Industry, Bureau of Disability Determination" in his April 12, 2016 response to defendant's motion to dismiss. Pl.'s Resp. 1.

[2] The facts are derived from the complaint ("Compl.") and the exhibits appended to defendant's motion to dismiss ("Def.'s Ex.").

[3] An IRS "Request for Appeals Review" form is identified as "Form 12203." Compl. 1, 3, 5.

[4] Each Levy Notice is identified as "Notice CP504." Compl. 2, 4, 6.

[5] "The IRS's administrative files . . . are presumed to be true, accurate, and correct." Harris v. United States, 44 Fed. Cl. 678, 682 (1999) (internal citations omitted); accord Dallin ex rel. Estate of Young v. United States, 62 Fed. Cl. 589, 600 (2004) ("It is well established that a certified copy of the taxpayer's Form 4340 triggers the presumption of correctness in favor of the government . . . ." (internal citations and quotation marks omitted)); Perez v. United States, 312 F.3d 191, 195 (5th Cir. 2002) ("IRS Form 4340 constitutes valid evidence of a taxpayer's assessed liabilities and the IRS's notice thereof."). Furthermore, "this court and others have

tax year 2009, plaintiff's account status reflected a balance due of $33,847.45. Id. at A3.

On April 15, 2013, plaintiff filed an income tax return for tax year 2012. Id. at A5. The IRS's examination of the 2012 return resulted in its assessment, on October 19, 2015, of additional tax, interest, and penalties totaling $14,027.55. Id. On November 9, 2015, the IRS issued a Levy Notice. Id.; Compl. 4. According to the corresponding Certificate of Assessments and Payments issued for tax year 2012, plaintiff's account had a balance due of $13,323.47. Def.'s Ex. A6.

One year later, on April 15, 2014, plaintiff filed an income tax return for tax year 2013. Id. at A8. On October 19, 2015, the IRS assessed additional tax, interest, and penalties totaling $19,228.46. Id. On November 9, 2015, the IRS issued a Levy Notice. Id. According to the corresponding Certificate of Assessments and Payments issued for the tax year 2013, plaintiff's account had a balance due of $19,228.46. Id. at A9.

On February 5, 2016, defendant filed a motion to dismiss the complaint for lack of jurisdiction. In his response, filed on April 12, 2016, plaintiff describes the June 2014 audit and expresses his frustration at not being able to arrange a face-to-face meeting with an IRS supervisor:

> I appeared for an audit of my 2013 tax return in June 2014 . . . . After an intense review by [the IRS, the IRS extended its] tax review [of] previous years 2009, 2012. [The IRS] noticed that the U.S. Treasury owed me money from 2007, 2008 levy, lien and salary.
>
> I requested a meeting to discuss [the IRS's] findings . . . at the Philadelphia IRS office.
>
> I have waited months for a personal face to face discussion [with the IRS] to no avail. Therefore, I wanted to be heard in court to discuss the re[a]son for denial of my tax expenses. I have see[n] in person only one IRS staff in 2 years. I only receive a collection notice with no discussion of verbal nature.
>
> During 2007 and 2008, the IRS offices of the Treasury in Cincinnati, OH [illegible] $160,000 from 4 [of my] checking and savings accounts . . . .
>
> In addition[,] my salary & bonus were taken from 2007,

---

routinely considered Form 4340 under the public records exception to the hearsay rule." Ebeyer v. United States, 114 Fed. Cl. 538, 548 (2014).

> 2008 for [a total amount of] $300,000. I have received no refund from the IRS for the [illegible] funds taken for an alleged debt of [$]200,000 for tax year 2002.

> I felt the court system would look at the total picture.

Pl.'s Resp. 1-2. Defendant filed its reply on April 28, 2016. The case is ripe for decision and the court deems oral argument unnecessary.

## II. LEGAL STANDARDS

### A. The Tucker Act

The United States Court of Federal Claims ("Court of Federal Claims") is a court of limited jurisdiction. Jentoft v. United States, 450 F.3d 1342, 1349 (Fed. Cir. 2006) (citing United States v. King, 395 U.S. 1, 3 (1969)). The scope of this court's jurisdiction to entertain claims and grant relief depends upon the extent to which the United States has waived its sovereign immunity. King, 395 U.S. at 4. In "construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Fid. Constr. Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir. 1983). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." King, 395 U.S. at 4. Unless Congress consents to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." United States v. Sherwood, 312 U.S. 584, 587-88 (1941).

The Tucker Act confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). Although the Tucker Act waives the sovereign immunity of the United States for claims for money damages, it "itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005). The separate source of substantive law must constitute a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc). "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." Cummings v. United States, 17 Cl. Ct. 475, 479 (1989) (internal citations omitted); see also United States v. Testan, 424 U.S. 392, 398 (1976) (stating that a "grant of a right of action must be made with specificity").

The Court of Federal Claims "may not entertain claims outside this specific jurisdictional authority." Adams v. United States, 20 Cl. Ct. 132, 135 (1990). Thus, with the exception of limited situations not relevant in this case, see 28 U.S.C. § 1491(a)(2), (b)(2), the Court of Federal Claims lacks jurisdiction to award declaratory or injunctive relief. Bowen v. Massachusetts, 487 U.S. 879, 905 & n.40 (1988); accord Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act does not provide independent jurisdiction over . . . claims for equitable relief."). Moreover, subject to limited exceptions, federal courts are prohibited from awarding declaratory or injunctive relief by the Anti-Injunction Act. See 26 U.S.C. § 7421(a) (2012) ("[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . ."). Specifically, section 7421(a) "provides that once a tax has been assessed, a taxpayer is powerless to prevent the [IRS] from collecting that tax." Stiles v. United States, 47 Fed. Cl. 1, 2 (2000). Nevertheless, Congress granted this court the authority to entertain tax refund suits, see 28 U.S.C. § 1346(a)(1), provided that the taxpayer plaintiff has made full payment.

## B. Pro Se Plaintiffs

The Court of Federal Claims holds pleadings of a pro se plaintiff to less stringent standards than litigants represented by counsel. Haines v. Kerner, 404 U.S. 519, 520 (1972). Courts have "strained [their] proper role in adversary proceedings to the limit, searching . . . to see if plaintiff has a cause of action somewhere displayed." Ruderer v. United States, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Although plaintiff's pleadings are held to a less stringent standard, such leniency "with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); see also Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for pro se litigants only."); Bernard v. United States, 59 Fed. Cl. 497, 499 (2004) (noting that pro se plaintiffs are not excused from satisfying jurisdictional requirements). As explained in Demes v. United States, "[w]hile a court should be receptive to pro se plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." 52 Fed. Cl. 365, 369 (2002).

## C. Motions to Dismiss Pursuant to RCFC 12(b)(1)

When resolving a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)). If the court determines that the factual allegations set forth in the complaint are insufficient to resolve the jurisdictional dispute, then it may consider relevant evidence beyond the pleadings. See Fisher, 402 F.3d at 1181-83.

Whether the court has jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "Without jurisdiction the

court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). The parties, or the court sua sponte, may challenge the existence of subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006). When a jurisdictional challenge is raised, the plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Brandt v. United States, 710 F.3d 1369, 1373 (Fed. Cir. 2013); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The plaintiff cannot rely solely on allegations in the complaint, but must bring forth relevant, adequate proof to establish jurisdiction. See McNutt, 298 U.S. at 189. Ultimately, if the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. RCFC 12(h)(3); Matthews v. United States, 72 Fed. Cl. 274, 278 (2006).

## III. DISCUSSION

### A. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Tax Refund Claim

It is "undisputed" that the Court of Federal Claims possesses the authority to adjudicate tax refund claims. CNG Transmission Mgmt. VEBA v. United States, 84 Fed. Cl. 327, 328 (2008); accord Radioshack Corp. v. United States, 82 Fed. Cl. 155, 158 (2008); see also Artuso v. United States, 80 Fed. Cl. 336, 338 (2008) ("A tax refund claim, with very few exceptions, is the only type of tax dispute over which this court has jurisdiction."). "A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims." United States v. Clintwood Elkhorn Mining Co., 553 U.S. 1, 4 (2008) (citing 28 U.S.C. § 1346(a)(1)). Section 1346 of title 28 of the United States Code provides, in relevant part:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> > (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected . . . .

28 U.S.C. § 1346(a)(1). In order for the court to assert jurisdiction over such a claim, however, a plaintiff must (1) satisfy the full payment rule, and (2) file a tax refund claim with the IRS. Artuso, 80 Fed. Cl. at 338. In this case, plaintiff failed to do either, thus depriving this court of jurisdiction.

### 1. Plaintiff Failed to Satisfy the Full Payment Rule

Under the full payment rule, a court's jurisdiction over tax refund claims is limited to only those claims where the taxpayer has fully paid all taxes assessed for the tax year at issue prior to the initiation of the claim. Flora v. United States, 357 U.S. 63, 75 (1958). The United States Court of Claims, the predecessor of the United States Court of Appeals for the Federal Circuit, "consistently applied the full payment rule with regard to the principal tax deficiency. Where the principal tax deficiency [w]as not . . . paid in full, such tax refund claims [were] dismissed . . . ." Shore v. United States, 9 F.3d 1524, 1526 (Fed. Cir. 1993) (citing Tonasket v. United States, 590 F.2d 343 (Ct. Cl. 1978)); accord Rocovich v. United States, 933 F.2d 991, 993-94 (Fed. Cir. 1991). In other words, "payment of the assessed taxes in full is a prerequisite to bringing a refund claim." Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); accord Artuso, 80 Fed. Cl. at 338 ("A refund suit is exactly what the descriptive term implies. Under the 'full payment rule' a plaintiff must have fully paid the tax, penalties, and interest at issue.").

"A Certificate of Assessments and Payments is routinely used to prove that a tax assessment has in fact been made." Rocovich, 933 F.2d at 994; accord Young, 62 Fed. Cl. at 601 (stating that a Certificate of Assessments and Payments is "'generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made'" (quoting Long v. United States, 972 F.2d 1174, 1181 (10th Cir. 1992))); United States v. Chila, 871 F.2d 1015, 1018 (11th Cir. 1989) (recognizing that a Certificate of Assessments and Payments is "presumptive proof of a valid assessment" (internal quotation marks omitted)). The Certificate of Assessments and Payments for plaintiff's 2009, 2012, and 2013 tax years reflect that plaintiff has not fully paid his income tax liability for those years. Thus, to the extent that plaintiff seeks a refund of amounts that were collected pursuant to the Levy Notices and applied thereafter to his tax liabilities for tax years 2009, 2012, and 2013, the court lacks jurisdiction to entertain these claims. Simply put, plaintiff fails to allege, much less demonstrate, that he has fully paid his outstanding tax liabilities for these three tax years. See Def.'s Ex. A2-3, A5-6, A8-9 (containing Certificates of Assessments and Payments indicating that payments for tax years 2009, 2012, and 2013 remain outstanding).

### 2. Plaintiff Failed to File a Tax Refund Claim

In addition to satisfying the full payment rule, a plaintiff must also have filed a claim for a refund with the IRS for the amount of tax at issue, in compliance with 26 U.S.C. § 7422(a). Artuso, 80 Fed. Cl. at 338. Section 7422(a), which waives the federal government's sovereign immunity from tax refund suits, Chi. Milwaukee Corp. v. United States, 40 F.3d 373, 375 (Fed. Cir. 1994), provides:

> No suit or proceeding shall be maintained in any court for the
> recovery of any internal revenue tax alleged to have been
> erroneously or illegally assessed or collected, or of any penalty

claimed to have been collected without authority, or of any sum
alleged to have been excessive or in any manner wrongfully
collected, until a claim for refund or credit has been duly filed with
the Secretary, according to the provisions of law in that regard, and
the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a).  By requiring that a plaintiff first file a refund claim with the IRS, section
7422(a) creates a jurisdictional prerequisite to filing a refund suit in this court.  Chi. Milwaukee
Corp., 40 F.3d at 374 (citing Burlington N., Inc. v. United States, 684 F.2d 866, 868 (Ct. Cl.
1982)); see also Clintwood Elkhorn Mining Co., 553 U.S. at 7 (noting that Congress must have
intended section 7422(a) to have an expansive reach given its inclusion of five "any's" in one
sentence).  In this case, plaintiff has not alleged, nor is there any evidence, that he filed a refund
claim with the IRS for tax years 2009, 2012, and 2013.

### 3. Plaintiff Failed to Properly Plead a Tax Refund Claim

Finally, the court notes that, although not jurisdictionally fatal standing in isolation,
plaintiff has not complied with the requirements set forth in RCFC 9 for pleading a tax refund
claim.  The requirements of subdivision (m) of that rule embody the jurisdictional prerequisites
for maintaining such a suit in this court:

> (m)  **Tax Refund Claim.**  In pleading a claim for a tax refund, a
> party must include:
> (1) a copy of the claim for refund, and
> (2) a statement identifying:
>> (A)   the tax year(s) for which a refund is sought;
>> (B)   the amount, date, and place of each payment
>>       to be refunded;
>> (C)   the date and place the return was filed, if
>>       any;
>> (D)   the name, address, and identification number
>>       (under seal) of the taxpayer(s) appearing on
>>       the return;
>> (E)   the date and place the claim for refund was
>>       filed; and
>> (F)   the identification number (under
>>       seal) of each plaintiff, if different
>>       from the identification number of the
>>       taxpayer.

RCFC 9(m).  In this case, plaintiff has neither asserted that he filed a tax refund claim with the
IRS, nor filed a copy of any such claim along with a statement that includes the information
listed in subdivisions (A) through (F).  As a consequence, the court lacks jurisdiction to entertain

plaintiff's tax refund claims for tax years 2009, 2012, and 2013.

**B. To the Extent Plaintiff Seeks to Stay the Garnishment of His Wages or Enjoin Enforcement of the Tax Levies, the Court Lacks Subject Matter Jurisdiction**

Although not specifically requested by plaintiff, to the extent he seeks a stay of the ongoing garnishment of his wages by the IRS, see Pl.'s Resp. 2 ("In addition[,] my salary & bonus were taken from 2007, 2008 for [a total amount of] $300,000. I have received no refund from the IRS for the [illegible] funds taken for an alleged debt of [$]200,000 for tax year 2002."), the court lacks the power to do so. The court can only award equitable relief that is "incidental to and collateral to a claim for money damages." Bobula v. U.S. Dep't of Justice, 970 F.2d 854, 858-59 (Fed. Cir. 1992); accord Simanonok v. Simanonok, 918 F.2d 947, 952 (Fed. Cir. 1990) (stating that claims for injunctive relief are "not cognizable in a . . . Tucker Act case, absent a concurrent colorable claim for monetary recovery" (citing Richardson v. Morris, 409 U.S. 464, 465-66 (1973) (per curiam))). Although plaintiff seeks monetary relief in the form of a tax refund, the court lacks subject matter jurisdiction over the claim because, as stated above, plaintiff failed to (1) satisfy the full payment rule, (2) file a tax refund claim, and (3) properly plead a tax refund claim. Thus, to the extent plaintiff seeks a stay of the ongoing garnishment of his wages, because such a request is not incidental or collateral to a claim for money damages, it is not properly before this court.

The same is true to the extent plaintiff seeks to enjoin enforcement of the tax levies. "Absent a 'concurrent claim for monetary recovery,' this court lacks jurisdiction over the plaintiffs' claims for equitable relief. In addition, the Anti–Injunction Act prohibits a 'suit for the purpose of restraining . . . the collection of any tax . . . .' 26 U.S.C. § 7421(a)." Cherbanaeff v. United States, 77 Fed. Cl. 490, 505 (2007); accord Russell v. United States, 78 Fed. Cl. 281, 289 (2007); Betz v. United States, 40 Fed. Cl. 286, 291 (1998); see also 26 U.S.C. § 7421(a) ("Except as provided in [various] sections . . . no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.); Lonsdale v. United States, 919 F.2d 1440, 1442 (10th Cir.1990) ("The [plaintiffs'] complaint states that it seeks injunctive and declaratory relief as well as a refund of amounts collected pursuant to the levies in question. But their complaint is essentially an attempt to prevent the collection of assessed taxes by challenging the underlying tax assessments. That challenge violates the Anti-Injunction Act on its face.").

**C. To the Extent Plaintiff Alleges a Wrongful Levy Claim, the Court Lacks Subject Matter Jurisdiction**

Finally, to the extent plaintiff, by attaching copies of the three Levy Notices to his complaint, see Compl. 2, 4, 6, challenges their validity, the court lacks subject matter jurisdiction to entertain the claim. Section 7426(a) of the Internal Revenue Code provides, in part:

> (1) **Wrongful levy.** If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

26 U.S.C. § 7426(a)(1). In other words, section 7426(a) states that the right to initiate a wrongful levy action against the government belongs to a third party, not "the person against whom is assessed the tax out of which such levy arose." Id.; see also EC Term of Years Trust v. United States, 550 U.S. 429, 433 (2007). Plaintiff, however, is not a third party. Therefore, he is not "within the class of plaintiffs entitled to recover under the statute . . . ." Greenlee County, Ariz., 487 F.3d at 876.

## IV. CONCLUSION

For the reasons stated above, the court lacks jurisdiction over plaintiff's complaint. Accordingly, defendant's motion to dismiss the complaint is **GRANTED**. The Clerk of Court is directed to **DISMISS** plaintiff's complaint **WITHOUT PREJUDICE** and to enter judgment accordingly. No costs.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Judge